**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 4 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10348 |
| Plaintiff-Appellee, | D.C. No. 3:19-cr-00621-EMC-1 |
| v. | |
| AHMAD ABOUAMMO, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted May 16, 2024
San Francisco, California

Before: LEE and BRESS, Circuit Judges, and KANE,** District Judge.

Ahmad Abouammo appeals his convictions and sentence for acting as an

unregistered agent of a foreign government or official, 18 U.S.C. § 951, conspiracy

to commit wire and honest services fraud, 18 U.S.C. § 1349, wire and honest

services fraud, 18 U.S.C. §§ 1343, 1346, international money laundering, 18 U.S.C.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Yvette Kane, United States District Judge for the
Middle District of Pennsylvania, sitting by designation.

§ 1956(a)(2)(B)(i), and falsification of records to obstruct a federal investigation, 18 U.S.C. § 1519.  We have jurisdiction under 28 U.S.C. § 1291.  In an accompanying opinion, we reject Abouammo's challenges to his convictions.  In this memorandum disposition, we explain why Abouammo's sentence must be vacated and the case remanded for resentencing.

Grouping all counts except the § 951 conviction, the district court determined that Abouammo's advisory Sentencing Guidelines range was 70 to 87 months in prison.  Applying the version of the Guidelines in place before the recent changes that became effective on November 1, 2024, the district court based Abouammo's Guidelines range in part on a ten-point increase to Abouammo's base offense level for the amount of "loss."  U.S.S.G. § 2B1.1(b)(1).[1]  The district court calculated the "loss" to be $242,000, encompassing two of the $100,000 wire payments and the value of a Hublot watch given to Abouammo, which Abouammo later attempted to sell for $42,000.  Under the Guidelines, a loss between $150,000 and $250,000 results in a ten-point increase in the base offense level.  *See id.* § 2B1.1(b)(1)(F).

Recent changes to the Sentencing Guidelines, effective November 1, 2024, now define "loss" to include gain, instructing that "[t]he court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but

---

[1] Unless otherwise noted, all citations of the Guidelines are to the version in effect prior to the recent changes that became effective on November 1, 2024.

it reasonably cannot be determined." U.S.S.G. § 2B1.1(b)(1)(B). Abouammo was sentenced under the earlier version of the Guidelines, which did not define "loss." *See United States v. Kirilyuk*, 29 F.4th 1128, 1137 (9th Cir. 2022). Instead, ways of calculating "loss" were located in application notes in commentary to § 2B1.1. The "gain" provision referenced above was among these. *See* U.S.S.G. § 2B1.1 cmt. n.3(B) ("The court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined.").

The district court relied on this "gain" provision in the Guidelines' commentary to set Abouammo's advisory Guidelines range. At the time, this was a correct application of precedent. Subsequently, however, we held in *United States v. Castillo*, 69 F.4th 648, 655 (9th Cir. 2023), that "[t]he more demanding deference standard articulated in *Kisor* [*v. Wilkie*, 588 U.S. 558 (2019)] applies to the Guidelines' commentary." *Kisor* held that courts will defer to an agency's interpretation of a regulation only if the regulation is "genuinely ambiguous," which can be assessed only after the court "exhaust[s] all the 'traditional tools' of construction," namely, "text, structure, history, and purpose." 588 U.S. at 574–75 (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)).

Applying *Castillo*, whatever the full scope of the word "loss" in former U.S.S.G. § 2B1.1(b)(1) may be, that term at the very least cannot mean a "gain" that

3

does not purport to approximate a victim's "loss." The government does not really argue otherwise. It asserts in its brief that "[t]he dispute here is not, as Abouammo claims, over the definition of loss. Rather, it is about what tools are available to district courts to measure loss."

In this regard, the district court reasoned that because "[v]alue of property may be indicated by what a buyer is willing to pay for it," "KSA was willing, in essence, to pay $242,000 to obtain Twitter's confidential user data." By this logic, Twitter lost $242,000 worth of confidentiality because that is what the Saudi government paid to obtain the user information of the Saudi dissidents. The government thus asks us to treat Abouammo's gain as the fair market value of Twitter's lost right to the exclusive control of its information.

We reject this argument on this record. It is true that a district court "need not make its loss calculation with absolute precision; rather, it need only make a reasonable estimate of the loss based on the available information." *United States v. Zolp*, 479 F.3d 715, 719 (9th Cir. 2007). But here, we do not think two $100,000 payments and the value of the watch can be said to reasonably represent the amount of Twitter's loss from Abouammo's scheme. There is too much of a disconnect between the nature of that asserted loss and Abouammo's gain, and the record does not bridge the gap. The claimed relationship between Abouammo's profit and Twitter's loss is thus too tenuous to justify Abouammo's loss enhancement.

We accordingly vacate Abouammo's sentence and remand for resentencing. *See United States v. Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008) ("Although the Guidelines are only advisory, a material error in calculating the sentencing range is grounds for resentencing."). On the "loss" issue, resentencing may take place on an open record. Because the government could have reasonably relied on our prior case law allowing a defendant's gain to substitute for § 2B.1.1 "loss" under the then-operative version of the Guidelines, the government should have a fresh opportunity to demonstrate "loss" on remand.

We recognize that the district court stated that for Abouammo's § 951 conviction, which was not subject to the Guidelines, a 42-month sentence would be independently warranted. Nevertheless, because of the apparent alignment between the § 951 sentence and the 42-month concurrent sentences that Abouammo received on his other charges following the invalid Guidelines determination, we conclude that all of Abouammo's sentences should be vacated. Although it is possible that Abouammo's total imprisonment time will remain the same upon re-sentencing, re-sentencing is the proper course.

We affirm Abouammo's convictions. But we vacate his sentence and remand for resentencing.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**